# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**
          **Plaintiff,**

    **v.**                                    **Case No. 05-CR-100**

**JOSE RENTERIA,**
          **Defendant.**

---

### SENTENCING MEMORANDUM

Defendant Jose Renteria pleaded guilty to one count of selling a firearm to a convicted felon. 18 U.S.C. § 922(d). The probation office prepared a pre-sentence report ("PSR"), which calculated his offense level as 12 (base 14, U.S.S.G. § 2K2.1(a)(6), minus 2 for acceptance of responsibility, § 3E1.1(a)), and his criminal history category as I, producing an imprisonment range of 10-16 months. This range fell within Zone C of the grid, allowing a split sentence of prison and home/community confinement. See U.S.S.G. § 5C1.1(d). I concluded that a sentence at the low end of that range was reasonable. However, for the reasons which follow, I modified the guideline sentence somewhat and imposed a split sentence of five months community confinement followed by five months of home confinement.

### I. SENTENCING FACTORS

In imposing sentence, the court must consider the factors set forth in 18 U.S.C. § 3553(a), which include:

    (1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed--
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

I consider the statutory factors sequentially. First, I consider the specifics of the case, i.e. the nature and circumstances of the offense and the history and characteristics of the defendant. Second, I consider the facts of the case in light of the purposes of sentencing and the needs of the public and any victims. Finally, I translate my findings and impressions into a numerical sentence. In so doing, I take into account the kinds of sentences available, the sentencing range established by the Sentencing Commission, any pertinent policy statements issued by the Commission, and any restitution due the victims of the offense. In imposing a specific sentence, I must also seek to avoid unwarranted sentence disparities. United States v. Leroy, 373 F. Supp. 2d 887, 894-95 (E.D. Wis. 2005); see also United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). My ultimate task is, after considering all of the above circumstances, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2). United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005).

2

## II.  DISCUSSION

### A.  Nature of Offense and Character of the Defendant

Defendant sold a pistol to a confidential government informant, whom he had every reason to believe was a convicted felon.  He also had a discussion with the informant about the purchase of another pistol and apparently offered to take the informant to a gun store to buy him guns.  This was a very serious offense.  Efforts to keep guns out of the hands of criminals are thwarted by straw purchases and illegal private sales.  Those illegally obtained guns often end up being used in crimes and endanger the public.

In contrast to the very serious nature of the crime, defendant's character was, in all, quite positive.  Defendant was twenty-three years old and had been employed at U-Line Corporation for the past four years as an assembler, brazer and translator.  He held several jobs prior to that and appeared to have been steadily employed since adolescence.

Defendant dropped out of high school but was at the time of sentencing taking classes at Waukesha County Technical College and about to obtain his high school degree.  He had also received training in brazing and soldering in connection with his job.

I received a letter from defendant's girlfriend of six years, Jessica Manville, who had good things to say about him.  She indicated that they had plans for the future, which included finishing school, then getting married, buying a house, and having children.  Ms. Manville indicated that defendant had a generous nature and assisted his parents, who spoke little English.  A letter from Ms. Manville's mother confirmed many of these qualities.

Defendant had some contacts with the criminal justice system, but they were for minor offenses like graffiti, fireworks possession and trespassing, and occurred when

3

defendant was between the ages of seventeen and twenty. Defendant committed the instant offense in August 2003 but was not indicted until April 2005. He maintained a clean record during the interim.

There was an indication that defendant abused marijuana, but it appeared that he had stopped using. Aside from an initial positive test, all of his drug tests on pre-trial release were negative. He appeared to have no other correctional treatment needs.

## B. Purposes of Sentencing

I saw no evidence that defendant was dangerous. Given his prior contacts, there was some risk he would re-offend, but I believed it to be limited given the age of his record, his recent conduct, his employment, and his family ties and plans for the future. However, in light of the seriousness of the offense, there was a need for some form of confinement in order to promote respect for the law and deter others.

## C. Imposition of Sentence

As noted, the guidelines called for a term of 10-16 months. I concluded that an overall period of confinement of ten months was appropriate. However, in order to prevent defendant from losing his job and experiencing a set back in his education, and in consideration of the types of sentences available for this crime, § 3553(a)(3), I modified the guideline sentence somewhat. Rather than a split sentence of prison and home confinement, I imposed a sentence of community confinement and home confinement. This sentence ensured that defendant was confined for the period called for by the guidelines, which was appropriate given the very serious nature of the crime, but allowed him to

4

continue working and taking classes.  I concluded that both defendant and the public were better served by allowing him to continue in these positive efforts.

Because the Bureau of Prisons no longer honors recommendations of community confinement to satisfy the prison component of a sentence, see Pearson v. United States, 265 F. Supp. 2d 973, 975-76 (E.D. Wis. 2003), I placed defendant on probation, which was permissible for this type of offense, see 18 U.S.C. § 3561, in order to accomplish this sentence.  Finally, because the sentence was consistent with the length recommended by the guidelines, it did not create unwarranted disparity.

## III.  CONCLUSION

Therefore, for the reasons stated, I placed defendant on probation for a period of three years.  I ordered that he reside for 150 days in a community correctional center ("CCC") upon the first available vacancy, that he obey the rules of that facility, acknowledge in writing the receipt of such rules, and pay any costs at the direction of the probation officer. Upon release from the CCC, I ordered defendant to comply with the conditions of home confinement for an additional period of 150 consecutive days.  I allowed him to leave the CCC and his home for purposes of work and school.

I further ordered that defendant pay a fine of $500 as a condition of probation and re-pay the $150 in buy money to the ATF.  Other conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 27th day of September, 2005.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

5